UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-75-GWU

MICHAEL MCGAHA,                                                                             PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                       DEFENDANT.

## INTRODUCTION

Michael McGaha brought this action to obtain judicial review of an administrative denial decision on his applications for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?  If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

1

    3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

    4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

    5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

11-75  Michael McGaha

then an award of benefits may, under certain circumstances, be had. E.g., <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McGaha, a 33-year-old former water restoration technician, dishwasher and cook with a "limited" education, suffered from impairments related to cervical degenerative disc disease, lumbar degenerative disc disease with lumbosacral pain, a major depressive disorder, a panic disorder with possible agoraphobia, and a history of alcohol in reported full, sustained remission.  (Tr. 15, 21).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual

11-75  Michael McGaha

functional capacity to perform a restricted range of light level work. (Tr. 18, 21). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered to be totally disabled. (Tr. 22). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

The hypothetical question presented to Vocational Expert Christopher Raibot included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as: (1) an inability to more than frequently push or pull with the upper extremities; (2) an inability to more than occasionally stoop, kneel, crouch and climb stairs or ramps; (3) an inability to more than occasionally reach overhead; (4) an inability to continuously hyperextend or rotate the neck or head; (5) a need to avoid concentrated exposure to full body vibrations; and (6) a need to avoid hazards such as unprotected heights and dangerous machinery. (Tr. 61-62). With regard to mental abilities, the ALJ also indicated that the individual would be able to understand and retain simple work activities in a low stress, object-focused work environment in which contact with co-workers and supervisors would be only casual and infrequent in a non-public work setting and in which changes in work activities would be routine and gradual. (Tr. 62). In response, the vocational expert noted that McGaha's past work would all be precluded. (Id.). However, the witness indicated that a significant number of other jobs would remain available in

the areas of packaging and sorting type work activities as well as jobs involving weighing, measuring, checking and inspecting work. (Tr. 62-63). Therefore, assuming that the vocational factors considered by Raibot fairly characterized the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Kim Rowlands (Tr. 339-346) and Dr. Jorge Baez-Garcia (Tr. 374-381) each reviewed the record and opined that McGaha would be able to perform medium level work, restricted from a full range by an inability to more than occasionally stoop, crouch and climb ladders, ropes or scaffolds. The physical factors of the hypothetical question were consistent with these limitations.

Dr. Jill Kimm, a treating source at the Spine and Brain Neurosurgical Center, noted in November of 2007 that McGaha had a tenth grade level education and a history of heavy work which was the only type of work for which he had training. (Tr. 365). The physician indicated that his cervical disease would not preclude all work, but it would eliminate " . . . most jobs for which he is trying." (Id.). The physician

indicated that she supported the claimant's disability claim because "he would then be eligible for vocational rehabilitation and he would be trained for a job, which does not involve as much stress on his body." (Id.). The doctor thought that he could then "swiftly return to the work force." (Id.). The ALJ found that these statements from Dr. Kimm supported a finding that the plaintiff could perform other jobs at a lower exertional level and, so, was not totally disabled and cited the opinion in support of the denial decision. (Tr. 20). The court agrees with the ALJ's reasoning.

In January of 2008, Dr. Kimm indicated on a prescription pad that McGaha was permanently and totally disabled due to cervical spinal stenosis. (Tr. 454). The doctor provided no explanation for the change of opinion since November of 2007. The ALJ found that this conclusory opinion, without further explanation, would not supplant the physician's earlier finding that the claimant could still perform some work activity. (Tr. 21). The court notes that this disability opinion would go to the ultimate issue in the case and, so, would be an issue reserved to the Commissioner under the federal regulations and not be binding on the ALJ. 20 C.F.R. § 4041527(e)(1). Therefore, the ALJ properly rejected this disability opinion of Dr. Kimm.

McGaha argues that Dr. Kimm completed a Functional Capacities Evaluation Form supporting his disability claim which the ALJ improperly rejected because the signature was unreadable. (Tr. 20-21). A comparison of Dr. Kimm's signature on

8

11-75  Michael McGaha

the January, 2008 prescription pad at Exhibit 18F with the signature on the Functional Capacities Evaluation Form at Exhibit 7F suggests that these documents were signed by the same person. (Tr. 358, 454). However, the ALJ also stated that this report was given little weight because all the doctor did was state that the patient was "unable to work" rather than identifying specific physical limitations. (Tr. 20-21, 358). Thus, this was a conclusory opinion which would not be binding on the ALJ under the federal regulations, just like that issued by Dr. Kimm in January of 2008 as previously noted. Therefore, the court finds no error.

During the administrative hearing, McGaha complained about having difficulty picking up small items such as coins and paper clips. (Tr. 54-55). The plaintiff argues that the ALJ erred in failing to include restrictions concerning gross handling and fine manipulation in the hypothetical question. However, the court notes that no physician of record identified such physical limitations. Dr. Rowlands and Dr. Baez-Garcia, the only physicians to specifically address the issue, each indicated that the claimant had no manipulative limitations. (Tr. 342, 377). Therefore, the court finds no error.

McGaha also asserts that the ALJ erred by failing to include occupational restrictions to cover the loss of motion in his neck. However, the question did include limitations concerning hyperextension and flexion of the neck and reaching

9

overhead which would relate to this problem. (Tr. 61-62). Therefore, the court finds no error.

The ALJ also dealt properly with the evidence of record relating to McGaha's mental condition. Psychologist Terri Caudill examined the plaintiff in April of 2008 and diagnosed a major depressive disorder without psychotic features, a panic disorder with mild agoraphobia and a history of alcohol abuse reported to be in full remission. (Tr. 371). The claimant's ability to understand and remember simple instructions was rated as good. (Tr. 372). Caudill indicated that McGaha would have: (1) a "mild restriction of ability to make judgments; (2) a "mild to moderate" restriction of ability in such areas as attending and following through on complex tasks and responding appropriately to day-to-day work pressures; and (3) a "moderate" limitation of ability in interacting effectively with others. (Tr. 372-373). The ALJ cited this opinion in support of his decision and the mental factors of the hypothetical question were essentially consistent with it. (Tr. 21).

The undersigned notes that Psychologist Jan Jacobson reviewed the record and opined that McGaha would be "moderately" limited in such areas as completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length and number of rest periods, interacting appropriately with the general public and responding appropriately to changes in the work setting. (Tr. 382-383). These are

10

11-75  Michael McGaha

somewhat differently worded restrictions from those found by the ALJ.  To the extent these mental restrictions might be considered more severe limitations than those found by the ALJ, they would be outweighed by the opinion of Caudill, the examining source, since the administrative regulations provide that "generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).

McGaha argues that the hypothetical question failed to sufficiently incorporate all of his mental limitations.  The plaintiff cites the case of Ealy v. Commissioner of Social Security, F.594 F.3d 504 (6th Cir. 2010) for the proposition that when a claimant is confined to low stress work, the hypothetical question is required to contain specific occupational limitations reflecting low stress work such as restrictions concerning speed of performance, pace, quotas or hourly work limitations.  Since these were missing from the hypothetical question, it did not fairly characterize the plaintiff's mental condition and a remand is required.  However, as noted by the defendant, McGaha has misconstrued the court's findings in Ealy.  In Ealy, the ALJ had purported to rely upon the opinion of a mental health professional but had failed to include in the hypothetical question all of the mental restrictions indicated by that professional.  Ealy, 594 F.3d at 515-516.  The restrictions regarding speed of performance and pace were not intended as requirements when one was limited to low stress work but the restriction to low stress work alone was

11

not sufficient to reflect these restrictions cited by the mental health professional that the ALJ purported to rely upon. In the present action the ALJ relied upon the opinion of Caudill (Tr. 21) and the court has found that the hypothetical question fairly depicted the examiner's mental limitations. Therefore, the undersigned must reject the plaintiff's argument.

Finally, McGaha argues that the <u>Dictionary of Occupational Titles</u> (DOT) indicates that the specific jobs cited by the vocational expert in response to the ALJ's hypothetical question would not be available to him. Thus, the vocational testimony does not support the administrative decision.

In response to the hypothetical question, Raibot indicated that simple packing and sorting type work could still be done and cited DOT No. 920.685-054 as a specific example of this type of job. (Tr. 62). McGaha notes that DOT No. 920-687-010 indicates that the position requires a reasoning ability level of 02, meaning the individual must have the ability to carry out some detailed written and oral instructions. The hypothetical question's restriction to simple work activities would preclude this position. However, the hypothetical question did not actually restrict the individual to simple work alone but indicated that he retained the ability to perform simple work activities. (Id.). Level 02 reasoning is defined in the DOT as the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete

11-75  Michael McGaha

variables in or from standardized situations." The mental factors presented in the hypothetical question appear consistent with these requirements.

Raibot also reported that weighing, measuring, checking and inspecting work could be performed under the terms of the hypothetical question and cited DOT No. 563.687-010 as a specific example. (Tr. 62-63). McGaha asserts, without further elaboration, that this job requires more extensive exertional ability than allowed by the ALJ's hypothetical question. However, the DOT indicates that this was a light level position and, so, it would appear consistent with the hypothetical question which contained a limitation to light level work. (Tr. 61). Therefore, the court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 7th day of March, 2012.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**